IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RICHARD KIRZIEJONEK<br><br>　　　　Plaintiff,<br>　v.<br><br>ELMA TRANSPORT INC.<br><br>and<br><br>JOHN DOES 1-20<br><br>　　　　Defendants. | No:<br><br>CIVIL ACTION COMPLAINT<br><br>**JURY TRIAL DEMANDED** |

## CIVIL ACTION COMPLAINT

Plaintiff Richard Kirziejonek (hereinafter "Plaintiff"), hereby complains as follows against Defendant Elma Transport, Inc. and John Does 1-20 (hereinafter collectively "Defendant"), and states as follows:

## INTRODUCTION

1.　Plaintiff has initiated the instant action to redress Defendant's violations of the Truth in Leasing Act, 49 U.S.C. §14704 ("TILA"). Plaintiff asserts that Defendant entered into a lease with Plaintiff that violated the provisions of TILA.

2.　Plaintiff has initiated the instant action to redress Defendant's violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* (RICO). Plaintiff asserts that Defendant engaged in an electronic wire fraud scheme to defraud Plaintiff of compensation due him that violated the provisions of RICO.

3.　Plaintiff has initiated the instant action to redress Defendant's violations of the Illinois Wage Payment and Collection Act, 820 ILC 115/1 *et seq*. ("IWPCA"). Plaintiff asserts

1

that Defendant misclassified him as an independent contractor, and failed to pay him the wages due under contract, and made unlawful deductions from his pay in violation of 820 ILC 115/9.

4. Plaintiff has initiated this action to redress Defendant's breach of contract. Plaintiff asserts that Defendant promised to pay him for his work specific consideration as set forth in a contract, and failed to pay him the amount specified in the contract for the work performed.

5. Plaintiff has initiated this action to rescind and/or reform the contract with Defendant due to Defendant's fraud and material breach, and the unconscionability and illegality of the contract.

6. Plaintiff has initiated this action to recover the amount by which Defendant was unjustly enriched by its misconduct.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over Plaintiff's federal law claims pursuant to 28 U.S.C. § 1331. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 367.

8. This Court may properly maintain personal jurisdiction over Defendant because Defendant's contacts with this judicial district are sufficient for the exercise of personal jurisdiction to comply with traditional notions of fair play and substantial justice.

9. Pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2), venue is properly laid in this district because the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## PARTIES

10. The foregoing paragraphs are incorporated herein as if set forth in their entirety.

11. Plaintiff Richard Kirziejonek is an adult individual residing at 4468 Golf Club Lane, Spring Hill, FL 34609.

12. Defendant is engaged in the business of hauling and the delivery of freight by truck.

13. At all times relevant, Defendant was headquartered at 8936 Robin Drive, Des Plaines, Illinois 60016 or 1474 Elmhurst Road, Elk Grove Village, Illinois 60007.

14. At all times relevant herein, Defendant acted by and through its agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

## FACTUAL BACKGROUND

15. The foregoing paragraphs are incorporated herein as if set forth in their entirety.

16. Plaintiff worked full-time for Defendant as a commercial truck driver from in or around April 2019 through in or around November 2021.

17. As a condition of his engagement/employment, Defendant required Plaintiff to enter into a "Master Lease Agreement" whereby Plaintiff agreed to provide his driving and related services to Defendant.

18. At all times relevant, Defendant designated Plaintiff as an independent contractor.

19. Despite being designated as an independent contractor, Plaintiff was at all times supervised and managed by a dispatcher who provided him with assignments and the terms for carrying out such assignments.

20. At all times, Plaintiff was engaged in the same business enterprise as Defendant, the transportation of freight for Defendant's customers.

21. Plaintiff exclusively worked for Defendant during the period of his engagement/employment, had no other significant source of income, and did not transport freight for other carriers.

22. Defendant regularly deducted its business costs and expenses from Plaintiff's pay statements.

23. Plaintiff did not authorize such deductions at the time the deductions were made.

24. Defendant agreed to compensate Plaintiff at the rate of **90%** of the gross revenue received by Defendant for hauling jobs that Defendant assigned to Plaintiff to perform; the gross revenue received by Defendant for a particular hauling job was confirmed in a "Rate Confirmation Statement" between the broker or customer and Defendant.

25. Defendant, however, intentionally provided Plaintiff with intentionally altered Rate Confirmation Statements to deny Plaintiff the proper amount of compensation due Plaintiff.

26. Defendant provided Plaintiff these altered Rate Confirmation Statements by email.

27. Defendant's act of intentionally altering Rate Confirmation Statements constituted wire fraud and resulted in the theft of compensation due Plaintiff.

28. Plaintiff first learned of the altered Rate Confirmation Statements by happenstance as follows:

   a. On or around April 23, 2021, Arrive Logistics, a freight broker who worked with Defendant, called Plaintiff to confirm the delivery of a load (Arrive Order # 1879616) that Plaintiff was in the process of delivering. During the conversation, Arrive Logistics confirmed the gross revenue for the job.

   b. When Arrive Logistics confirmed the gross revenue for the job, Plaintiff realized that there was a discrepancy between the gross revenue for the job as disclosed by the customer, and the gross revenue for the job as provided in the Rate Confirmation Statement for the job, as supplied to Plaintiff by Defendant.

    c. Plaintiff accordingly requested that Arrive Logistics email Plaintiff a copy of the Rate Confirmation Statement for the job.

    d. Upon receiving the Rate Confirmation Statement for the job from the Arrive, Plaintiff compared the two Rate Confirmation Statements for the job (the one received from the customer and the one received from Defendant).

    e. A comparison of the two Rate Confirmation Statements revealed that the two are identical, **except** that the Rate Confirmation Statement supplied by Defendant altered to the gross revenue for the job by $100, so that it would appear to Plaintiff that the gross revenue for the job was $2,600, when in fact the gross revenue for the job was $2,700.

    f. This intentional alteration constituted fraud, and breach of contract and resulted in Defendant engaging in theft by deception in the amount of $90 (90% of $100).

29. By way of another example of Defendant intentionally altering a Rate Confirmation Statement to deprive Plaintiff through fraud of the compensation due Plaintiff:

    a. On or around September 14, 2021, while in the process of delivering a load (MC # 84992) for one of Defendant's brokers, Millennium Brokerage Firm, Plaintiff asked Millennium to email him the Rate Confirmation Statement for the job. The customer obliged..

    b. Upon receiving the Rate Confirmation Statement for the job from Millennium, Plaintiff compared the two Rate Confirmation Statements for the job (the one received from the customer and the one received from Defendant).

5

    c. A comparison of the two Rate Confirmation Statements revealed that the two were identical, **except** that the Rate Confirmation Statement emailed to Plaintiff by Defendant altered the gross revenue for the job by $200, so that it would appear to Plaintiff that the gross revenue for the job was $2,200, when in fact the gross revenue for the job was $2,400.

    d. This intentional alteration constituted wire fraud and resulted in Defendant engaging in theft by deception in the amount of $180 (90% of $200).

30. By way of another example of Defendant intentionally altering a Rate Confirmation Statement to deprive Plaintiff through fraud of the compensation due Plaintiff:

    a. On or around September 16, 2021, while in the process of delivering a load (Shipment No. S800250) for one of Defendant's brokers, Spot, Inc., Plaintiff asked Spot to email him the Rate Confirmation Statement for the job. Spot obliged.

    b. Upon receiving the Rate Confirmation Statement for the job from Spot, Plaintiff compared the two Rate Confirmation Statements for the job (the one received from Spot and the one received from Defendant).

    c. A comparison of the two Rate Confirmation Statements revealed that the two are identical, **except** that the Rate Confirmation Statement supplied by Defendant altered the gross revenue for the job by $400, so that it would appear to Plaintiff that the gross revenue for the job was $4,500, when in fact the gross revenue for the job was $4,900.

    d. This intentional alteration constituted wire fraud and resulted in Defendant engaging in theft by deception in the amount of $360 (90% of $400).

31. Plaintiff resigned his job with Defendant in the end of November 2021.

32. Pursuant to an arbitration agreement, Plaintiff filed a demand for arbitration with the American Arbitration Association ("AAA") on August 10, 2023.

33. On November 1, 2023, AAA administratively closed the arbitration matter due to Defendant's failure to comply with the AAA's Employment Arbitration Rules and the Employment Due Process Protocol.

## COUNT I
### Violations of the Truth-in-Leasing Act
**(49 U.S.C. § 14704, 49 C.F.R. § 376.12)**

34. The foregoing paragraphs are incorporated herein as if set forth in full.

35. To help facilitate the interstate and intrastate delivery of freight, Defendant entered into a Master Lease Agreements ("Agreement") with Plaintiff.

36. Plaintiff did not negotiate any of the terms in the Agreement.

37. The Agreement purports to lease, on behalf of Defendant, commercial trucks and driving services from Plaintiff.

38. Accordingly, the Agreement was required to confirm to the requirements set forth in the Truth in Leasing Act, 49 U.S.C. § 14704, and its accompanying regulations, 49 C.F.R. § 376.12.

39. Despite this, the Agreement violates TILA insofar as it:

   a. Fails to specify the amount Plaintiff would be paid for his work in the Agreement, in violation of 49 C.F.R. § 376.12(d), which requires "true" disclosure of the amount to be paid by Defendant for Plaintiff's work.

   b. Violates 49 C.F.R. § 376.12(d) because Defendant did not pay the compensation it agreed to pay Plaintiff;

    c. Provides that Plaintiff only has the right to *request* documents necessary to determine the accuracy of the calculations, instead of complying with the requirement in 49 C.F.R. § 376.12(g) that copies of rated freight bills be provided to drivers at or before the time of settlement;

    d. Violates 49 C.F.R. § 376.12(g) because Defendant provided Plaintiff with false Rate Confirmation Statements;

    e. Violates 49 C.F.R. § 376.12(f) requiring Defendant pay Plaintiff the amount owed under the Agreement within 15 days of submission of the necessary delivery documents, by providing that a driver may only challenge a discrepancy in his pay for 15 days, and may only bring a claim for *inter alia* unpaid wages within 90 days.

40. The conduct and business practices of authorized motor carriers must also comply with the Truth-in-Leasing regulations irrespective of whether their written lease agreements satisfy the requirements of the regulations. *See* 49 C.F.R. § 376.12.

41. Defendant's conduct did not conform to the requirements set forth in 49 C.F.R. § 376.12, as, by way of example only, Defendant failed to provide Plaintiff copies of the freight bills or other forms of documentation that *accurately* provided the amount paid by the shipper to Defendant for transporting the load, *see* 49 C.F.R. § 376.12(g), and failed to pay him the amount it had agreed to pay. *See* 49 C.F.R. § 376.12(d).

42. As a result of Defendant's violations of 49 C.F.R. § 376.12(d) and (g), Plaintiff was disadvantaged by a lack of transparency, and received compensation below the amounts agreed, resulting in damages.

## COUNT II
### Violations of Racketeer Influenced and Corrupt Organizations Act (RICO)

**(18 U.S.C. § 1962(c))**

43. The foregoing paragraphs are incorporated herein as if set forth in full.

44. Defendant engaged in an association-in-fact enterprise with freight brokers such as Arrive Logistics, Inc. and Millennium Brokerage Firm, Inc. in order to secure freight transportation contracts as part of its business ("RICO Enterprise").

45. Defendant agreed to pay Plaintiff 90% of the rate Defendant was paid by its customers for each load Plaintiff completed for Defendant.

46. The "Driver Pay Reports" issued by Defendant to Plaintiff state that Plaintiff was paid 90% of each load he transported for Defendant.

47. To evade paying the 90% due, Defendant emailed Driver Pay Reports that contained *false* information as to the amount Defendant was paid for the load.

48. Defendant additionally emailed altered and false freight bills to Plaintiff when he requested to review Defendant's documents.

49. For example, Defendant provided Plaintiff an unlawfully modified document purporting to be the original freight bill for his delivery to Arrive Logistics on April 30, 2021, showing that Defendant was paid $2,600 for a trip Plaintiff completed.

50. However, the actual freight bill, which Defendant did not provide to Plaintiff, shows that Defendant was paid $2,700 for the trip.

51. Similarly, Defendant provided false documentation to Plaintiff when he requested to review Defendant's freight bills.

52. By way of example:

9

    a. Defendant provided Plaintiff with an unlawfully modified document purporting to be the original freight bill for his delivery to SPOT on September 18, 2021, showing that Defendant was paid $4,500 for a trip Plaintiff completed.

    b. However, the actual freight bill, which Defendant did not provide to Plaintiff, shows that Defendant was paid $4,900 for the trip.

    c. Defendant provided Plaintiff with an unlawfully modified document purporting to be the original freight bill for his delivery for Millennium on September 15, 2021, showing that Defendant was paid $2,200 for a trip Plaintiff completed.

    d. However, the actual freight bill, which Defendant did not provide to Plaintiff, shows that Defendant was paid $2,400 for the trip.

53. Defendant's conduct satisfies the elements of criminal wire fraud as set forth in 18 U.S.C. § 1343.

54. Defendant's conduct in repeatedly emailing Plaintiff false and altered Rate Confirmation Statements in order to deprive him of the monies owed and induce him to accept such payment under the false belief that the amount paid was the amount due under his employment agreement satisfies the elements of criminal wire fraud as set forth in 18 U.S.C. § 1343.

55. Defendant unlawfully engaged in the conduct of the RICO Enterprise through a pattern of racketeering activity by repeatedly depriving Plaintiff of money owed via wire fraud, in violation of 18 U.S.C. § 1962(c).

56. Plaintiff has suffered damages as a result of Defendant's violations of 18 U.S.C. § 1962(c).

**COUNT III**
**Violations of the Illinois Wage Payment and Collection Act (IWPCA)**

**820 Ill. Comp. Stat. §§ 115**
**(Failure to pay wages due)**

57. The foregoing paragraphs are incorporated herein as if set forth in full.

58. Despite the Agreement specifying that Plaintiff was an independent contractor, Plaintiff is an "employee" as that term is defined in the IWPCA. 820 ILCS 115/2.

59. Accordingly, Defendant is an "employer" as that term is defined in the IWPCA. 820 ILCS 115/2.

60. Under the IWPCA, Defendant is required to pay Plaintiff all wages due on regular paydays. 820 ILCS 115/4.

61. By failing to pay Plaintiff the wages he was due under the compensation agreement, Defendant violated the IWPCA, and Plaintiff has suffered damages as a result.

**COUNT IV**
**Violations of the Illinois Wage Payment and Collection Act (IWPCA)**
**(Unlawful Deductions)**

62. The foregoing paragraphs are incorporated herein as if set forth in full.

63. Under the IWPCA, an employer is only permitted to make deductions from wages if the employee freely agrees to such deductions at the time the deductions are made. 820 ILCS 115/9.

64. Defendant regularly deducted its business costs and expenses, as well as other deductions, from Plaintiff's pay statements.

65. Plaintiff did not authorize such deductions at the time the deductions were made.

66. Defendant's actions in making such deductions violated the IWPCA, and Plaintiff has suffered damages as a result.

**COUNT V**
**Breach of Contract (Common Law)**

67. The foregoing paragraphs are incorporated herein as if set forth in full.

68. Defendant agreed to pay Plaintiff 90% of the gross revenue it received for the transportation activities Plaintiff completed on Defendant's behalf.

69. Defendant failed to pay Plaintiff the amount promised.

70. Defendant committed its breach through fraud, violating the covenant of good faith and fair dealing.

71. As a result of Defendant's breach of the compensation contract it agreed to with Plaintiff, Plaintiff has suffered damages.

## COUNT VI
### Rescission of Contract (Common Law)
(Material Breach)

72. The foregoing paragraphs are incorporated herein as if set forth in full.

73. Defendant's fraud-in-the-performance of the Master Agreement constitutes a material breach of its agreements with Plaintiff under Illinois common law, because Plaintiff would not have entered into the Agreement if he had known Defendant was going to engage in fraud-in-the-performance of the agreement. *See, e.g., Trapkus v. Edstrom's, Inc.,* 489 N.E.2d 340, 345 (Ill. App. 3d 1986)

74. Accordingly, Plaintiff is excused from all requirements of performance under the Master Agreement.

75. As a result of Defendant's conduct, Plaintiff has suffered damages.

## COUNT VII
### Reformation/Rescission of Contract (Common Law)
(Illegality and Unconscionability)

76. The foregoing paragraphs are incorporated herein as if set forth in full.

77. The Master Agreement between Plaintiff and Defendant contain a number of unlawful provisions.

78. Moreover, the Master Agreement is procedurally and substantively unconscionable.

79. The Master Agreement should accordingly be found void.

80. The Master Agreement also provides for a severability clause.

81. Plaintiff seeks to reform the contract such that the unlawful provisions in the contract be excised pursuant to the Arbitrator's equitable powers.

### COUNT VIII
### Unjust Enrichment

82. The foregoing paragraphs are incorporated herein as if set forth in full.

83. To the extent that the Agreements between Plaintiff and Defendant are void for illegality, unconscionability, or material breach, Defendant was nevertheless unjustly enriched as a result of its actions by procuring Plaintiff's labor unjustly.

84. Plaintiff should be compensated for Defendant's unjust enrichment at his expense.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendant is to be prohibited from continuing to maintain its illegal policy, practice or customs in violation of federal and state laws;

B. Defendant is to compensate, reimburse, and make Plaintiff whole for any and all pay they would have received had it not been for Defendant's illegal actions, including but not limited to past lost earnings;

C. Plaintiff is to be awarded liquidated, treble and punitive damages as available under applicable law.

D. Plaintiff is to receive a trial by jury;

E. Plaintiff is to to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal and state law; and

F. Plaintiff is to be awarded all other relief this Court deems just and proper.

               Respectfully Submitted,

               */s Joshua S. Boyette*
               Joshua S. Boyette, Esq.
               Richard S. Swartz, Esq.
               Alexa B. Wissner, Esq.
               **SWARTZ SWIDLER, LLC**
               9 Tanner Street, Suite 101
               Haddonfield, NJ 08033
               Phone: (856) 685-7420
               Fax: (856) 685-7417

Date: November 6, 2023

**DEMAND TO PRESERVE EVIDENCE**

Defendant is hereby directed to preserve all physical and electronic information pertaining in any way to Plaintiff's employment and/or contractual relationship with Defendant, to Plaintiff's cause of action and/or prayers for relief, and to any defenses to same, including, but not limited to, electronic data storage, the Driver Information Table, Hours of Service Records, Wage Records, Resource History Data, Defendant's marketing materials (including its website), orientation materials, complaints made by any driver regarding pay, closed circuit TV footage, digital images, computer images, cache memory, searchable data, emails, DriverTech messages, driver logs, spreadsheets, employment files, memos, text messages, any and all online social or work related websites, entries on social networking sites (including, but not limited to, Facebook, Twitter, MySpace, etc.), and any other information and/or data and/or things and/or documents which may be relevant to any claim or defense in this litigation.

        Respectfully Submitted,

        */s Joshua S. Boyette*
        Joshua S. Boyette, Esq.
        **SWARTZ SWIDLER, LLC**
        9 Tanner Street, Suite 101
        Haddonfield, NJ 08033
        Phone: (856) 685-7420
        Fax: (856) 685-7417
        *Pro Hac Motion to be Filed.*

Date: November 9, 2023